Filed 11/30/22  In re A.A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re A.A., a Person Coming Under the Juvenile Court Law.

RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,

Plaintiff and Respondent,

v.

S.A. et al.,

Defendants and Appellants.

E079407

(Super. Ct. No. RIJ2000519)

OPINION

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Cheryl C. Murphy, Judges and Walter H. Kubelun, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Conditionally reversed and remanded with directions.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant S.A.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant A.M. Sr.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsels for Plaintiff and Respondent.

I.

INTRODUCTION

S.A. (Mother) and A.M. Sr. (Father) appeal from the juvenile court's order terminating parental rights to their child A.A.[1] The parents argue that the Riverside County Department of Public Social Services (DPSS) failed to discharge its duty of initial inquiry under state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), and therefore the matter must be conditionally reversed. DPSS asserts that substantial evidence supports the juvenile court's findings that ICWA did not apply and that any error was harmless.

We conclude that DPSS prejudicially erred by failing to comply with its duty of initial and continuing inquiry under ICWA-related state law. (Welf. & Inst. Code,[2] § 224.2, subd. (b).) Accordingly, we conditionally reverse the order terminating parental rights and remand the matter for further ICWA inquiry.

---

[1] A.A.'s sister M.M. is not a subject to this appeal.

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were in a long-term, unmarried relationship and had three children. A.A. was born in November 2021, M.M. in April 2020, Ad.A. in June 2019. They resided together with the maternal great grandmother and the maternal uncle. Mother and Father had a history with DPSS dating back to November 2019 and an unresolved history of abusing controlled substances, specifically fentanyl. The children remained in the parents' care while DPSS investigated allegations relating to caretaker incapacity/absence and neglect. In September 2020, while Mother was pregnant with A.A., the parents left Ad.A. unattended. Ad.A. had access to fentanyl pills and died as a result of fentanyl poisoning despite emergency measures to revive him. Father and Mother were arrested for, and charged with, child endangerment/ willful cruelty to a child and murder.

M.M. was taken into protective custody in September 2020 and placed in a foster home. M.M. was declared a dependent of the court and reunification services were bypassed/denied to the parents. On September 4, 2020, as to M.M., the juvenile court found that ICWA did not apply.[3] Mother and Father's parental rights as to M.M. were eventually terminated in October 2021, and M.M.'s foster parents desired to adopt her.

---

[3] DPSS's reports in M.M.'s case do not indicate what efforts DPSS made in inquiring of relatives as to M.M.'s Indian status.

On June 17, 2022, the juvenile court terminated the dependency and jurisdiction as to M.M.

Mother gave birth to A.A. in November 2021 while Mother was incarcerated. A.A. was detained and placed in the same home as her sister M.M. At the time of A.A.'s detention, Mother was 19 years old and Father had just turned 22. As part of a "no-bonding rule" for incarcerated parents, Mother was not allowed to have contact with A.A. Mother asked that A.A. be placed with the maternal great-grandmother, S.R., or a maternal great-aunt. Father also wanted A.A. placed with the maternal great-grandmother. S.R., however, declined placement of the baby due to her old age and her home's lack of suitability for an infant. A maternal cousin reached out to DPSS to inquire as to A.A.'s possible placement, stating that she was interested in caring for the baby.

On November 19, 2021, DPSS filed a petition on behalf of A.A. pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). In the petition, the social worker noted that both parents were asked about the child's Indian status on November 16, 2021, and both gave no reason to believe that the child was or may be an Indian child. DPSS thus reported in its detention report that ICWA did not apply.

The detention hearing was held on November 22, 2021. Neither parent was present as they had not been transported from local custody. The juvenile court formally detained A.A. from parental custody, found that ICWA did not apply, and continued the

matter to November 24, 2021 so that the parents could be present. The court's minute order of the detention hearing also indicates the court found that DPSS had conducted a sufficient inquiry regarding whether the child may have Indian ancestry.

On November 24, 2021, Father and Mother filed an ICWA-020 Parental Notification of Indian Status (ICWA-020) form. Both Mother and Father signed and declared under penalty of perjury that none of the options on the form applied. Specifically, they declared that (1) neither they nor the child was or may be a member of, or eligible for membership in, a tribe; (2) none of their lineal ancestors were members of a tribe; (3) neither they nor the child was a resident or was domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land; (4) the child was not or had been a ward of a tribal court; and (5) neither parent nor the child possessed an Indian identification card indicating membership or citizenship in an Indian tribe.

At the continued detention hearing held on November 24, 2021, Mother's counsel informed the court that Mother had no Native American heritage. Father's attorney informed the court that Father indicated he had no American Indian ancestry. The juvenile court did not specifically inquire of Mother and Father as to their Native American ancestry, but noted that "[n]either parent is aware of any American Indian ancestry."

In its jurisdictional/dispositional report, DPSS indicated that ICWA "does not apply" and that on November 22, 2021, at the detention hearing, the juvenile court "determined that [ICWA] does not apply to this proceeding." On December 20, 2021,

5

both parents denied having any Native American ancestry. Mother reported that the maternal grandmother had passed away in 2019, that she had a good relationship with her siblings and the maternal grandfather who was incarcerated, and that she spoke with her siblings on the telephone at least once a week. Father disclosed that he had a good relationship with the paternal grandmother and his siblings, and a complicated relationship with the paternal grandfather. The parents wanted A.A. placed with Mother's friend/maternal cousin K.S. or the maternal aunt, Y.R. However, in December 2021, Mother stated that she did not know K.S. well but that her grandmother told her to give A.A. to K.S. due to K.S. not being able to have children of her own.

On December 27, 2021, the juvenile court authorized the assessment of maternal aunt Y.R. for placement. DPSS made contact with maternal aunt Y.R., but she requested that her name be removed from the placement process. Mother also suggested that her paternal cousins be considered for placement. The social worker called the paternal cousins on seven different days, but they did not answer any of the phone calls and the social worker was unable to leave messages due to their voicemail being full. The social worker eventually made contact with the paternal cousins on January 27, 2022, but the cousins were not in a position to care for A.A.

The jurisdictional/dispositional hearing was held on February 24, 2022. Both parents were present, as well as the paternal grandmother, A.G., and the paternal great-grandmother, E.C. Father's counsel requested that DPSS assess the paternal grandmother and the paternal great-grandmother for placement of A.A. The juvenile court determined

6

that DPSS had conducted a sufficient inquiry regarding whether the child may have Indian ancestry. The court then found that A.A. was not an Indian child and that ICWA did not apply. The parents waived their constitutional rights, and the court sustained the petition as amended, assumed jurisdiction, and removed A.A. from the physical custody of the parents. The court also declared A.A. a dependent of the court and denied reunification services to the parents.

A.A. continued to reside with her sibling M.M. The foster parents/prospective adoptive parents desired to adopt both A.A. and M.M. and provide them with a stable, loving home. A.A. and the prospective adoptive parents had formed a reciprocal bond and attachment and all of A.A.'s physical, emotional, and developmental needs were being met by the prospective adoptive parents.

On June 23, 2022, the juvenile court authorized DPSS to assess a non-related extended family member, J.P., and the "grandmother" for possible placement of A.A.[4] The social worker spoke with the grandmother on June 30, 2022, regarding her taking placement of A.A. The grandmother indicated that she was unable to provide care for A.A. and that her living conditions were not ideal for the child.

---

[4] The court's minute order of the June 23, 2022 status review hearing indicates DPSS to assess the "*maternal grandmother*" for placement. However, DPSS's July 19, 2022 status review report states: "The Court ordered the Department to assess the NREFM, Ms. P[.] and the *paternal grandparents* for possible placement of the child." Yet, this same July 19, 2022 status review report notes: "On June 30, 2022, I spoke with the *maternal grandmother* regarding taking placement of her granddaughter." The reporter's transcript of the June 23, 2022 hearing merely states "grandmother." Thus, the record is unclear as to whether DPSS spoke with the paternal grandmother or the maternal grandmother, despite Mother claiming her mother had passed away in 2019.

On July 19, 2022, at the section 366.26 hearing, the juvenile court found that A.A. was likely to be adopted and terminated parental rights. Mother and Father thereafter timely filed their respective notice of appeal.

III.

DISCUSSION

Mother and Father contend that the juvenile court and DPSS failed to comply with their duty of initial inquiry with respect to ICWA. They thus argue the evidence did not support the court's findings that ICWA did not apply. They further assert that the error was prejudicial and urge us to reject the requirement that a parent must make an affirmative showing of prejudice. Mother lists several relatives who were known to DPSS but no ICWA inquiry was made of them.

DPSS "concedes that the record does not affirmatively show that relatives who were readily available were asked about Native American ancestry in the family," but argues this court should affirm the juvenile court's finding that ICWA did not apply based on the record. DPSS initially asserts that the parents forfeited this issue for failing to object in the court below. Alternatively, DPSS contends substantial evidence supports the juvenile court's finding that ICWA did not apply, the court did not abuse its discretion when it found that a sufficient inquiry had been made, and that any error was harmless.

Preliminarily, we decline to find the parents forfeited the ICWA issue for failing to object below. In general the forfeiture doctrine does not bar complaints on appeal

8

concerning the application of ICWA. (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195.) The inquiry and notice requirements of ICWA serve the interests of the Indian tribes "'"irrespective of the positions of the parents" and cannot be waived by the parent.' [Citation.] A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287.) California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes. (See §§ 224-224.6; *In re Abbigail A.* (2016) 1 Cal.5th 83, 91 ['persistent noncompliance with ICWA led the Legislature in 2006 to "incorporate[] ICWA's requirements into California statutory law"'].) An Indian child is any unmarried person under 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); see § 224.1, subd. (b).)." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)

"'"'Federal regulations implementing ICWA . . . require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." [Citation.] The court must also "instruct the parties to inform the court if they

9

subsequently receive information that provides reason to know the child is an Indian child."'"" [Citations.] 'State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child."'" (*In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).)

As discussed in *In re Austin J.* (2020) 47 Cal.App.5th 870, 883 and *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1049, California law imposes a duty of initial inquiry in every case, and a duty of further inquiry when there is reason to believe a child may be an Indian child under the ICWA. The department's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b); see *J.C.*, *supra*, 77 Cal.App.5th at p. 77.) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers-or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) The court *must* inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry also includes requiring each party to complete California Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there is reason to believe that an Indian child is involved in a proceeding, further inquiry is required.  (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 883; *In re D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049; *In re A.M.* (2020) 47 Cal.App.5th 303, 321-323.)  The law requires further inquiry only "'when "the court, social worker, or probation officer has reason to believe that an Indian child is involved [or, under Cal. Rules of Court, rule 5.481(a)(4), 'may be involved'] in a proceeding. . . .""" (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.)  "'When that ["reason to believe"] threshold is reached, the requisite "further inquiry" "includes:  (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe."'" (*Ibid.*; accord, *J.C.*, *supra*, 77 Cal.App.5th at p. 78)  Thus, there are two types of inquiry the social service agency is required to conduct:  an initial inquiry, which is always required, and a further inquiry, which is required only when the agency has reason to believe an Indian child is or may be involved in the proceeding.  Finally, if the further inquiry "'"'results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.'"'" (*J.C.*, *supra*, at p. 78.)

The duty to provide formal notice arises only if DPSS or the court "knows or has reason to know that an Indian child is involved."  (25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884.)  Federal regulations define the

11

grounds for reason to know that an Indian child is involved (25 C.F.R. § 23.107(c)(1)-(6)), and state law conforms to that definition (§ 224.2, subd. (d)(1)-(6)).

"'"'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.'" [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."'" (*J.C.*, *supra*, 77 Cal.App.5th at p. 78.)

Here, DPSS acknowledges the record does not affirmatively show that relatives who were readily available were asked about the child's Native American ancestry. Moreover, the record indicates that the juvenile court failed to inquire of Mother and Father personally when they first appeared at the November 24, 2021, continued detention hearing. Furthermore, the record in A.A.'s sibling's case does not show what efforts DPSS made in inquiring of readily available relatives. Hence, we find that the juvenile court erred in determining ICWA did not apply when it failed to ensure adequate initial inquiries had been made. Although DPSS inquired of the parents, the court failed to ensure that DPSS inquired of the extended relatives that were readily available. The record indicates DPSS was aware of the following relatives: presumably the maternal grandmother, the maternal grandfather, the maternal great-grandmother, the maternal aunt and uncle, the maternal great aunt, the paternal grandmother, the paternal great-

12

grandmother, and paternal cousins. However, neither DPSS nor the court asked them about potential Indian ancestry.

The social services agency is obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) The juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*Ibid.*) Because the court and DPSS failed to discharge its duty of initial inquiry required under section 224.2, there is insufficient evidence to support the court's determination that ICWA was inapplicable to the case. (See § 224.2, subds. (b), (c), (e); *In re K.R.*, *supra*, at p. 709 ["[O]nce there is sufficient information to believe that the children might be Indian children within the meaning of ICWA and the California statutes, 'responsibility for compliance' with those statutes 'falls squarely and affirmatively' on *both* the social services agency and the court."]; accord, *In re Darian R.* (2022) 75 Cal.App.5th 502, 509.)

Nonetheless, the failure here concerned the agency's duty of initial inquiry, thus only state law is involved. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*).) "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial." (*Ibid.*) As we recently held in *Benjamin M.*, a failure to discharge the duty of initial inquiry is prejudicial, and we will therefore conditionally reverse, if "the record indicates that there was readily obtainable information that was

likely to bear meaningfully upon whether the child is an Indian child." (*Id*. at p. 744; [We concluded the department "failed its duty of inquiry by not asking 'extended family members' . . . whether there [was] reason to believe [the minor was] an Indian child."]; compare *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578 ["[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding."]; contra *In re M.B.* (2022) 80 Cal.App.5th 617, 629-630 [per se reversal where department and juvenile court failed their duties of ICWA inquiry].)[5]  Notably, the *Benjamin M.* standard does not require "proof of an actual outcome (that the parent may actually have Indian heritage)." (*Benjamin M.*, *supra*, at pp. 743-744.)  Rather, the missing information need only be relevant to the ICWA inquiry, "whatever the outcome will be." (*Id*. at p. 744; see also *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 ["in

---

[5]  We acknowledge that Courts of Appeal have applied different standards of harmless error to defects occurring at the initial inquiry phase, even within the same appellate court.  Several courts have reversed for defective initial inquiries whenever there is an "absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry . . . requirements." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484; see, e.g., *In re A.R.* (2022) 77 Cal.App.5th 197, 203, 206-207; *In re H.V.* (2022) 75 Cal.App.5th 433, 438, fn. 4.)  Other courts have deemed any defect harmless unless the parent makes an offer of proof or other assertion of Indian heritage on appeal (see, e.g., *In re A.C.* (2021) 65 Cal.App.5th 1060, 1065, 1070-1073), or unless the record contains information "suggesting a reason to believe that the child at issue may be an 'Indian child' within the meaning of ICWA" (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, review granted).

14

determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child"].)

We find the ICWA error was prejudicial. The record shows that DPSS had contact information for several maternal and paternal relatives who qualified as extended family members. The extended maternal and paternal family members thus were readily available, and their responses would "shed meaningful light on whether there is reason to believe" that the child is Indian child, whatever the outcome of the inquiry may be. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) The record is unclear whether DPSS had contact information for all of the extended relatives. However, it appears DPSS made no attempts to obtain such information. As a result, we have no idea how difficult it would be to get it.[6]

Although the parents had continued to deny Native American heritage, there is no indication in the record to suggest Mother and Father were fully informed of their Indian heritage, especially in light of their young ages and substance abuse issues. In short, there is no good excuse for why DPSS did not seek this information, and good reason to believe the information would be relevant. Therefore, DPSS's failure to obtain the information was prejudicial. As in *In re M.B.*, *supra*, 80 Cal.App.5th at pages 629-630,

---

[6] On remand, DPSS should make an attempt to obtain the extended relatives' contact information.

15

the failure of DPSS and juvenile court to fulfill their statutory obligations under ICWA requires that we conditionally reverse and remand the matter for full compliance with ICWA.

DPSS raises a number of arguments why remand is unnecessary under the different standards of harmless error, all of which we reject. They argue that under the standard we applied in *In re A.C.*, *supra*, 65 Cal.App.5th 1060, which requires a parent to "'make an *affirmative representation* of Indian heritage' on appeal" (*Id.* at p. 1069, italics added), the parents are unable to demonstrate prejudice. But, as we explained in *Benjamin M.*, we think that standard inappropriately shifts the burden of inquiry to the parents, to the detriment of potentially interested tribes. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.) They attempt to distinguish our case from *Benjamin M.* on the ground that "in the instant matter there is evidence from both parents about their lack of Native American ancestry" and "that none of their lineal ancestors were members of a tribe." But as section 224.2, subdivision (b) makes clear, the parents are not the end of the inquiry and DPSS only inquired of the parents. They did not inquire of any maternal or paternal relatives. "By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431.) "[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the *parent may not have*." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 556, italics added; see

16

also *In re J.C.*, *supra*, 77 Cal.App.5th at pp. 70, 78-80 [same]; *In re Darian R.*, *supra*, 75 Cal.App.5th at p. 509 [same]; *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [same].)

DPSS also cites opinions holding ICWA inquiry error harmless in the absence of some indication the parents' disclaiming of Indian ancestry was unreliable. (See, e.g., *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015 [no prejudice when all parents "unequivocally denied Indian ancestry," the mother identified no evidence suggesting any parents "might unknowingly be members of an Indian tribe," and the evidence showed "[a]ll of the parents appear to have been in contact with their extended families"]; *In re M.M.* (2022) 81 Cal.App.5th 61, 72, review granted Oct. 12, 2022, S276099 ["There is nothing in the record indicating mother and father might have been unaware of having Indian ancestry."]; *In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 786, review granted Sept. 21, 2022, S275578 [no prejudice when mother and father both disclaimed Indian ancestry, they both "grew up with their biological family members," and "[m]other points to nothing else in the juvenile court's record indicating that she or father has any American Indian heritage"].) However, we are applying a different analysis of harmless error. Our approach assumes the parents' representations that they lack Indian ancestry are not sufficiently reliable to support a finding of harmless error unless something else in the record corroborates them.

We are unmoved by DPSS's arguments. We cannot reasonably infer Father and Mother asked their family members themselves before denying their Indian ancestry, as there is no evidence suggesting they did or did not. Absent some evidence suggesting

17

Father and Mother already asked their family members, or that the information the family members have is unlikely to meaningfully bear on A.A.'s Indian status (one way or the other), DPSS is obligated to speak to them precisely because we cannot impute knowledge one family member has about their family to all family members. Moreover, it is not the parent's duty to ask their relatives for this information, it is the department's. Without more, DPSS cannot rely on the parent's denials assuming they did the work for them—they must do the investigation themselves.

For these reasons, "[w]here the [d]epartment fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 435.) Accordingly, we must conditionally reverse the order terminating parental rights. At a minimum, DPSS must contact the known extended family members to make the initial ICWA inquiry, and the juvenile court must determine whether DPSS has satisfied its ICWA duties and whether ICWA applies to A.A.

IV.

DISPOSITION

The order terminating parental rights is conditionally reversed and "remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion." (*In re M.B.*, *supra*, 80 Cal.App.5th at p. 630.) Specifically, on remand, the juvenile court

18

shall order the department to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3).  If the court determines ICWA does not apply, the order terminating parental rights shall be reinstated.  If the court determines ICWA does apply, the court shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

19